**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

JOSEPH R. KASTELEBA,                      :
                                          :
                         Plaintiff,       :
                                          :          Case No. 3:05-CV-1739
              v.                          :
                                          :          (Judge Kosik)
                                          :
JOHN JUDGE, et al.,                       :
                                          :
                         Defendants.      :
                                          :

# MEMORANDUM

Presently before us is the defendants' Motion for Summary Judgment against Plaintiff Joseph R. Kasteleba ("Kasteleba"). The amended complaint alleges that the defendants violated Kasteleba's Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. Kasteleba alleges that he was detained for approximately three months subsequent to a routine traffic stop because the defendants knowingly provided false information to Florida law enforcement. We have subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, because the claims in the complaint raise federal questions. For the reasons that follow, we will grant the defendants' motion.

## PROCEDURAL HISTORY

On August 3, 2005, Kasteleba filed the original Complaint against the defendants, John Judge ("Judge"), Michael L. Green, Allen Castor, Jeffrey R. Imboden, Gary R. Lucht, Gerard N. Massaro, Sean R. Ryan, Michael M. Webster, Lloyd A. White, John R. Tuttle, Margaret E. Thompson, the Commonwealth of Pennsylvania, and the Commonwealth of Pennsylvania Board of Probation and Parole, in the Court of Common Pleas for Luzerne County. (Doc. 1.) The defendants removed the action to the Middle District of Pennsylvania on August 25, 2005. (Id.) Three days later, on August 29, 2005, the defendants moved to dismiss Kasteleba's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(c). (Doc. 3.) By Order dated

October 13, 2005, we granted the Motion to Dismiss and afforded Kasteleba an opportunity to file an amended complaint.  (Doc. 7.)

Kasteleba filed the Amended Complaint against the same defendants on November 1, 2005.  (Doc. 8.)  Again the defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), on November 21, 2005.  (Doc. 9.)  In our Order of April 24, 2006, we dismissed (1) all claims against the defendants sued in their official capacity because, in their official capacity, the defendants were not "persons" under 42 U.S.C. § 1983 and (2) all claims against the Commonwealth of Pennsylvania and the Commonwealth of Pennsylvania Board of Probation and Parole pursuant to Eleventh Amendment sovereign immunity.  (Doc. 12.)  Remaining defendants in this action are John Judge, Michael L. Green, Allen Castor, Jeffrey R. Imboden, Gary R. Lucht, Gerard N. Massaro, Sean R. Ryan, Michael M. Webster, Lloyd A. White, John R. Tuttle, and Margaret E. Thompson, all individually.  On May 30, 2006, the remaining defendants answered the amended complaint.  (Doc. 15.)

On October 1, 2007, the defendants filed a Motion for Summary Judgment against all counts of Kastelaba's complaint.  (Doc. 34.)  The parties filed appropriate briefs.  (Docs. 42, 43.)  The motion is now ripe for disposition.

## Factual Background

On June 17, 1982, Kasteleba pled guilty to false imprisonment and attempted robbery in Broward County, Florida.  (Defs.' Statement of Facts ¶ 5, doc. 34 [hereinafter "SOF"].)  Kasteleba received three years in prison and seven years probation for his offenses.  (SOF ¶ 6.)  While Kasteleba was on probation, he moved to Pennsylvania, where on July 13, 1984 the Pennsylvania Board of Probation and Parole (the "Board") accepted supervision of him pursuant to the Interstate Compact for the Supervision of Parolees and Probationers, Act of June 25, 1937, P.L. 2086, No. 415 (codified as amended at 61 Pa. Stat. Ann. §§ 321–23 (also known as the Uniform Act for Out-of-State Supervision)), which governs interstate probation and parole.  (SOF ¶ 7.)

2

On February 20, 1995, someone robbed at gunpoint and assaulted Anthony Manchio and assaulted Les Kellmer at Kellmer's Bar[1] in Plains, Pennsylvania.  No one reported the incident to the police until the next day, when Manchio attempted to file a criminal complaint against Kasteleba, whom Manchio identified as the perpetrator.  (Final Progress & Conduct Report 2 [hereinafter "Final Report"], App. to SOF 22.)  The district magistrate was unable to process Manchio's criminal complaint though, because Manchio lacked an address for Kasteleba.  (Id.)  The district magistrate advised Manchio to return on February 22.  (Id.)  From what we know, Manchio did not then return.  The incident at Kellmer's Bar was later detailed in an arrest report:

> On Wednesday, 2/20/85, at approximately 2:30 AM, Client [Kasteleba] barged in to Les Kellmer's Tavern . . . where he confronted the bar owner, Les Kellmer, and two customers, Anthony Manchio . . . and "Butch" Mayeski . . . .  At the time, Client was reportedly armed with a handgun.  Mayeski fled and hid under the bar and Client confronted Manchio in the kitchen area of the Tavern.  Mr. Kellmer attempted to gain control of the handgun wielded by Client, but was knocked to the floor.  Client then physically assaulted Manchio, by pistol whipping him about the face, resulting in Manchio receiving a gash to his forehead, a blackened right eye and a broken nose.  Client then reportedly stole $550. from Manchio and fled from the Tavern when Kellmer indicated he was going to call the Police.  Mr. Kellmer noted that he did not contact Police because he did not want to get Client into any further difficulty with the Police.

(Arrest Report 1, Feb. 28, 1985, App. to SOF 14.)  The Board was notified of the incident by Manchio.  (See id.)  Board agents tried unsuccessfully to locate Kasteleba.  (Final Report 2, App. to SOF 22.)  On February 25, 1985, Kasteleba turned himself in; he was arrested for violating his probation and detained in the Luzerne County Prison.  (SOF ¶ 8.)  The Arrest Report, Violation Report, and Technical Violation and Evidence Report, all available in the Appendix to the defendants' statement of facts (doc. 35), charged Kasteleba with violating his probation by failing to report a change in employment status, changing employment without authorization,

---

[1]Les Kellmer's establishment is variously called "Kellmer's Bar" and "Kellmer's Tavern" in the pleadings and the documents appended to them.  We use the names interchangeably.

possessing a weapon, engaging in assaultive behavior, and failing to pay public defender fees (from Florida).  (SOF ¶ 9.)

Defendant Judge was notified of the incident, and he spoke personally with the witnesses to the incident.  Judge's written account of his investigation follows, in pertinent part:

> On the afternoon of 2-21-85 Mrs. Doris Philips, Luzerne County Adult Parole Department, telephoned the Scranton District Office to advise that Anthony Manchio . . . was in their office with a complaint concerning a client.  Mr. Manchio then spoke with Agent Judge of the Scranton District Office and stated essentially that he, Manchio, had been at Kellmer's Bar . . . on 2/20/85 at about 2:30 AM, when client, armed with a handgun, burst into the bar, assaulted Manchio, taking $550 from his person, and also assaulting the bar owner, Mr. Kellmer.  Manchio was positive concerning his identification of client and stated that he had also been to the office of District Magistrate Joseph Verespy to file a criminal complaint against client.

> On the evening of 2-21-85 Agent Judge personally interviewed Mr. Les Kellmer at Kellmer's Bar.  Mr. Kellmer confirmed that . . . client, armed with a handgun, burst into the bar and assaulted Manchio, as well as Mr. Kellmer.  Mr. Kellmer was positive as to the identification of client as he has known client and other members of client's family for many years.

> On 2-22-85 extensive efforts were made to locate and arrest client, but without success.  It was determined that on the evening of 2-21-85 client and the girlfriend, Deborah Holland, stayed in Room 186 of The Station Choo-Choo Inn . . . .  Client registered as Tom Kanor, 161 Maiden Lane, Wilkes-Barre, PA.  A desk clerk at the inn identified client by photograph as the man who registered as Tom Kanor.  Subsequent interview with the client's girlfriend, Deborah Holland, confirmed that she and client had stayed at the Choo-Choo Inn and that the girlfriend had sniffed cocaine, although she denied any involvement of client with respect to drugs.

> On the morning of Monday, 2-25-85, agent interviewed Mr. Anthony Manchio at the office of the Luzerne County District Attorney.  Manchio again re-stated that on 2-20-85 at 2:30 AM he was at Kellmer's Bar when a fellow barged in, pistol-whipped him and Mr. Kellmer and took $550 from Manchio's rear trouser pocket.  According to Manchio, the assailant missed $6,500 which was in a jacket pocket.  However, by 2-25-85, when interviewed, Manchio's identification of client was less definite.  Nonetheless, it was obvious that Manchio had been assaulted in that he had a badly bruised and bloodshot right eye and there was a gash on his forehead.  Agent photographed Manchio's injuries

4

. . . .

> This agent interviewed client at the Luzerne CP [County Prison] on
> 2-26-85.  At that time client stated essentially he had in fact been at
> Kellmer's Bar, arriving there at about midnight the evening of 2-
> 20-85.  He claims to have left the bar at about 2:00 AM with
> friends whom he identified as Tom Kantor . . . and the girlfriend,
> Deborah Holland . . . .  He claims they went to Kantor's home and
> spent the whole night there.  He acknowledged that while at the bar
> he was introduced to Anthony Manchio by Deborah Holland, but
> no conversation took place; they simply shook hands.

(Final Report 2–3, App. to SOF 22–23.)

The interstate probation compact, under which Kasteleba's probation was governed,

required Pennsylvania to hold a probable cause hearing on Kasteleba's alleged probation

violations, and to forward the results to Florida for final disposition.  (SOF ¶ 11.)  On March 4,

1985, a board hearing examiner conducted a probable cause hearing, wherein probable cause that

Kasteleba had violated his probation conditions was established.  (SOF ¶¶ 10, 12.)  Kasteleba

had advance notice of the hearing and was represented by counsel at the hearing.[2]  (Hearing

Report Face Sheet 1, Defs.' Br. Ex. A at 2.)  The hearing examiner's hearing report summarizes

the proceeding:

> EVIDENCE (STATE)
>
> Parole Agent John Judge testified that the client was arrested on
> February 25, 1985 and at that time charged with violation of
> Condition 3c for failure to notify the parole supervision staff within
> 72 hours of change of employment, Violation of Condition 5b for
> possession of a weapon (handgun), violation of Condition 5c for
> failure to refrain from assaultive behavior and violation of Florida
> Special Condition–Failure to pay $30 per month public defender's
> fee.
>
> With regard to violation of Condition 3c, Agent Judge testified that
> on February 25, 1985 during the course of a personal interview
> with assistant supervisor Frank L. Walsh, at the Scranton District
> Office, Joseph Kasteleba acknowledged that he had changed his
> employment status on or about February 18, 1985 and failed to
> notify the parole supervision staff of that change.  On February 26,

---

[2]The probation revocation proceedings appear to comport with the due process
requirements laid out in <u>Gagnon v. Scarpelli</u>, 411 U.S. 778 (1973), and Kasteleba does not argue
that impropriety at the probable cause hearing caused the issuance of the arrest warrant.

1985 during a personal interview with the parolee by Agent Judge at the Luzerne County Prison, parolee acknowledged that he had been self-employed doing business with American Wheel and Axle, Pocono Trailer Park, Wilkes-Barre, Pennsylvania, but had sold his truck approximately ten days previously and thereafter had no means by which to conduct the business, and, in fact, had no income from American Wheel and Axle following the sale of the truck.

With regard to Condition 5b, Agent Judge testified that on February 21, 1985 he personally interviewed Mr. Les Kellmer at Mr. Kellmer's tavern on 1719 River Street, Plains Township, Pennsylvania, who stated that at approximately 2:30 A.M. on February 20, 1985 Joseph Kasteleba barged through the back door of the tavern armed with a pistol. Mr. Kellmer was positive of his identification of client as client has been a customer at the tavern and in addition, Mr. Kellmer has known client and other members of the client's family for many years, having been brought up in the same community.

With regard to Condition 5c, Agent Judge testified that on February 21, 1985 during the course of a personal interview with Les Kellmer, Mr. Kellmer stated that Joseph Kasteleba had barged into the tavern through the rear door and assaulted a customer. The customer was Anthony Manchio, and when Mr. Kellmer attempted to stop the assault by Joseph Kasteleba, he was knocked to the floor.

On February 21, 1985, during the course of a telephone interview with Mr. Anthony Manchio, Agent Judge was advised by Mr. Manchio that on February 20, 1985 at approximately 2:30 a.m. he had been physically assaulted by Joseph Kasteleba who beat him about the face with a hand gun causing a laceration of Mr. Manchio's forehead, a blackened right eye, and a broken nose. (reference--photo enclosed).

With regard to violation of Florida Special Condition, Agent Judge testified that on February 26, 1985 Pennsylvania authorities telephoned Mr. Steve Raines, a correctional/probation officer I, Florida Department of Corrections, who, after checking records at that agency, stated no payment of any kind had been received from the client in compliance with the Florida Special Condition requiring the client to pay $2,000 public defender's fee, payable at the rate of $30 a month.

EVIDENCE (DEFENSE)

At the time of the probable cause hearing, Joseph Kasteleba testified that he sold his truck and that he was in the process of borrowing a truck so that he could continue his business. He did acknowledge during his testimony at the probable cause hearing that he had no income from the time he had sold his truck. With

6

> regard to Conditions 5b and 5c Defense Attorney Russin, on behalf
> of Joseph Kasteleba, submitted into evidence copies of withdrawal
> of criminal prosecution on charges of assault and robbery.
>
> With regard to the Florida Special Condition, Kasteleba testified
> that on January 9, 1985 he had sent a money order in the amount of
> $20 to the state of Florida.  Kasteleba had no receipt to show for
> the money having been sent.
>
> In addition, submitted at the time of the probable cause hearing,
> was an affidavit from Deborah Holland, indicating that she was in
> the company of Kasteleba on February 19, 1985.

(Hearing Report Face Sheet 2–3, Defs.' Br. Ex. A at 3–4.)  The board hearing examiner

recommended that Florida immediately forward a warrant to return Kasteleba to Florida for

further proceedings.  (SOF ¶ 12.)  At the hearing, Kasteleba introduced mistaken identity

withdrawal-of-prosecution forms from Manchio and Kellmer, who did not physically appear.

(Final Report 3, App. to SOF 23.)  Because the district magistrate did not process the criminal

complaint, there were no criminal charges to withdraw.  (Id.)

Agent Judge believed that Manchio and Kellmer had correctly identified Kasteleba, but

had been intimated by Kasteleba into withdrawing their identification of Kasteleba, which Agent

Judge stated in his final report.  (Id.)  Agent Judge noted the lapse of time between the date that

parole agents started to look for Kasteleba, February 22nd, and the date on which Kasteleba

turned himself in, February 25th, as opportunity for Kasteleba to have threatened the witnesses to

recant.  (Id.)  Indeed, Agent Judge noted that on March 4th, a day before the probable cause

hearing, Kellmer "expressed great concern that [Kasteleba] would retaliate if [he] were to offer

testimony."  (Id.)  Previously, "Mr. Kellmer was positive of his identification of [Kasteleba], as

[Kasteleba] ha[d] been a customer at the Tavern and further because Mr. Kellmer had known

[Kasteleba] and other members of [Kasteleba's] family for many years, having been brought up

in the same community."  (Technical Violation and Evidence Report 1, App. to SOF 18.)

Additionally, Judge noted that,

> with regard to Violation's No. 2 & 3, the victim, Anthony
> Manchio, was positive of his identification of client when he made
> the initial complaint, to Agent, on 2/21/85.  However, on Saturday,

> 2/23/85, Client went to Manchio's residence, and by Client's own admission, to this Agent on 2/26/85, 'introduced himself to Manchio, shook his hand and asked him to drop the charges as it was a case of mistaken identity.' On 2/27/85 Manchio telephoned the Scranton District Office and stated that Client was not the man who assaulted him at Kellmer's Bar on 2/20/85.

(Id. at 2, App. to SOF 19.) After Manchio's phone call, Manchio could not be located, and he failed to appear at the probable cause hearing. (Final Report 3, App. to SOF 23.)

Following the March 5, 1985 probable cause hearing, the Board wrote to its counterpart in the State of Florida and requested that Florida take custody of Kasteleba and return him to Florida as a probation violator. (SOF ¶ 14.) Florida did not respond to the Board, so on April 18, 1985, Kasteleba was released from custody pursuant to the Board's Director of Interstate Services. (SOF ¶¶ 16–17.) According to Kasteleba, at Kasteleba's release from custody, Judge threatened Kasteleba, stating that he would "get him." Judge states that he did not threaten Kasteleba or state that he would "get him." (SOF ¶ 49.) The Board closed interest in Kasteleba's supervision (SOF ¶ 17), and Judge dictated a final report regarding the incident. (SOF ¶ 20.) Judge believed the contents of the final report to be true and accurate. (SOF ¶ 21.) Judge never transmitted any information that he knew or believed to be false or inaccurate about Kasteleba to any law enforcement officials or entities within Florida or Pennsylvania. (SOF ¶¶ 50–51.) Judge had no further contact with Kasteleba until this lawsuit was filed. (SOF ¶ 18.)

On April 30, 1985, the Honorable Harry G. Hinckley, Jr., of Broward County, Florida, issued a warrant for Kasteleba's arrest because he violated his probation in four ways: (1) changing employment without consent, (2) possessing a firearm without consent, (3) assaulting Les Kellmer and Anthony Manchio, and (4) failing to pay public defender's fees in Broward County. (Warrant 1, App. to SOF 100.) According to notes on Florida Probation and Parole Services correspondence, although a warrant for Kasteleba's arrest was issued, his extradition to Florida was declined "because witnesses stated in trial that D was not the man that assaulted them. He was not guilty." (Letter from Wanda Walker, Fla. Corr. Prob. Officer I, to Lola

Alston, Fla. Interstate Compact Specialist (Mar. 3, 1986), App. to SOF 21.)  At no time prior to

the filing of this lawsuit did Judge know about the April 30, 1985 warrant.  (SOF ¶ 42.)

In October, 1985, Kasteleba was involved in a traffic accident in Luzerne County.  (SOF

¶ 27.)  Kasteleba was injured in the accident, and had to be hospitalized.  During his

hospitalization, Kasteleba was held under armed guard because the Honorable Harry G.

Hinckley, Jr., had issued a warrant for his extradition to Florida on April 30, 1985.  (SOF ¶ 27.)

Kasteleba was released after no one from Florida came to pick him up.  (SOF ¶ 28.)   Kasteleba

did not inquire of Florida why a warrant had been issued for his extradition.  (SOF ¶ 29.)

On April 20, 2004, Lee County, Florida, police arrested Kasteleba subsequent to a routine

traffic stop based on the warrant issued April 30, 1985 by the Honorable Harry G. Hinckley, Jr.

(SOF ¶ 37.)  According to the arrest report:

> On Tuesday, 04/20/04, at 0919 hours I observed a white Volvo,
> PA. tag DVT2976 fail to obey a traffic control device aka stop sign
> at Estero and Old San Carlos Blvd.  I initiated a traffic stop at Lynn
> Hall Park without incident.  The defendant admitted to me that he
> has a suspended license out of Pennsylvania.  A routine
> information check thru records revealed an active warrant out of
> Broward County for attempted robbery and they will extradite.
> The defendant was identified to me by his wife of ten years as
> Joseph Robert Kasteleba.  Defendant was read the Miranda from a
> printed card which he fully understood placed under arrest and
> transported to the Lee County Jail without incident.

(Arrest/Notice to Appear 1, App. to SOF 103.)  Kasteleba was subsequently released from

custody on July 9, 2004.  (SOF ¶ 48.)

The Board has the power to post wanted notices through the Commonwealth Law

Enforcement Assistance Network and the National Crime Information Center.  (SOF ¶ 43.)  The

Board's Operations Center processes the notices and responds to inquiries regarding the notices.

(SOF ¶ 44.)   The Board never posted a wanted notice for Kasteleba, and the Board never

received an inquiry from law enforcement in Florida during Kasteleba's detention.  (SOF ¶¶

46–47.)  Additionally, Judge never posted a notice, nor was Judge contacted by Florida law

enforcement.  (SOF ¶¶ 25, 26, 55.)  Judge had no knowledge of the traffic stop and the subsequent events until the filing of this lawsuit.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A disputed fact is material when it could affect the outcome of the suit under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id. at 249.  The court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor.  Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a genuine issue concerning any material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party demonstrates this by filing a short and concise statement of the material facts, in numbered paragraphs, supported by references to the record, as to which the moving party contends that there is no genuine issue to be tried.  M.D. Pa. Loc. R. 56.1.  Once the moving party has satisfied its burden, the nonmoving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson, 477 U.S. at 257; see Celotex Corp., 477 U.S. at 323–24.  The nonmoving party must file a short and concise statement of the material facts to respond to the numbered paragraphs of the moving party's statement, as to which it contends that a genuine issue to be tried exists.  M.D. Pa. Loc. R. 56.1.  This statement must not

rely on mere allegations or denials; but rather must set out specific facts showing a genuine issue for trial that are supported by evidence.  <u>See</u> Fed. R. Civ. P. 56(e)(2); M.D. Pa. Loc. R. 56.1. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." <u>Hugh</u>, 418 F.3d at 267 (citing <u>Anderson</u>, 477 U.S. at 251).

If the court determines that the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, then no genuine issue for trial exists.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>Celotex Corp.</u>, 477 U.S. at 322.

Kasteleba, the non-moving party, has not fulfilled his burden of presenting evidence to establish a genuine material issue for trial.  First, we note that Kasteleba wrongly submitted a counter-statement of material facts, entitled Statement of Material Facts of Plaintiff in Opposition to Motion for Summary Judgment of Defendants (doc. 38), which is not sanctioned under our local rules.  <u>See</u> <u>supra</u>.  The local rules make clear that the non-moving party must respond to each paragraph of the moving party's statement.  <u>See</u> <u>supra</u>.  Kasteleba fails to include the documents to support his citations in his Statement of Material Facts of Plaintiff in Opposition to Motion for Summary Judgment of Defendants for paragraphs 3–10, 13–17, 21–23, 30, 33, 39, 40, and 41.  (<u>See</u> doc. 38.)  Kasteleba also provides an Answer to Statement of Material Facts (doc. 37) that responds to each paragraph of the moving parties' statement, however the Answer fails to provide support for the genuine issues alleged.  For example,

Kasteleba responds to some paragraphs with conclusory denials or broad statements that are not supported by evidence in the record, such as Kasteleba's response to paragraph 50.[3]  In sum, Kasteleba admits paragraphs 1–11, 14, 17–20, 24–38, 40–41, 43–48, 54–56, and 59, and denies broadly, without citing evidence, paragraphs 12, 13, 15, 21–23, 39, 42, 50–53, 57, and 58.

Although we view the facts in the light most favorable to the non-moving party, the non-moving party has the duty to present affirmative evidence to support each essential element of his claim in order to defeat a properly supported motion for summary judgment.  See Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001).  Given the statements of facts presented to us, we find that no genuine issue of material fact exists for trial.  Therefore, summary judgment is appropriate.

## DISCUSSION

Both parties agree that we should enter summary judgment in favor of all individual defendants except for John Judge.  (Defs.' Mot. Summ. J. ¶ 1; Pl.'s Answer to Defs.' Mot. Summ. J. ¶ 1.)  We agree, and will enter summary judgment in favor of Defendants Michael L. Green, Allen Castor, Jeffrey R. Imboden, Gary R. Lucht, Gerard N. Massaro, Sean R. Ryan, Michael M. Webster, Lloyd A. White, John R. Tuttle, and Margaret E. Thompson.  The only party left in this action is John Judge; we will address Kastelaba's claim against him now.

---

[3]Paragraph 50 of the defendants' statement of facts provides that Judge never knowingly transmitted any false or inaccurate information about Kasteleba to the State of Florida.  Kasteleba responds: "Denied.  The Final Progress and Conduct Report of Judge, who was Plaintiff's Probation Officer, details specific facts known only to Judge, and resulted in the issuance of the Affidavit - Violation of Probation and Warrant twelve (12) days after Plaintiff's release from the Luzerne County Correctional Facility.  By way of further answer, the Final Progress and Conduct Report of Judge does not indicate that Judge ever advised the State of Florida that all of the charges against Plaintiff had been dismissed and that he had been released from custody.  By way of further answer, the Warrant continued and existed within the State of Florida up until the time of Plaintiff's arrest by reason of a traffic stop on April 20, 2004."  Kasteleba also provides this response to paragraphs 39, 42, 51, 52, 53, 57, and 58.

Kasteleba's theory of liability rests on alleged threats that Judge made to Kasteleba and alleged deliberate acts that Judge committed.  These threats include: "I have been doing this a long time.  You're a punk.  I'm going to make sure that you do a lot of time in the–you're going to be–you're on probation.  You're going to do time in the state of Pennsylvania.  I have it right here that you're going to be backing up fifteen years.  I'm going to make sure that you do time in Pennsylvania.  Then Florida's going to pick you up, and you're going to do time down there.  I deal with people like you every day," (allegedly said to Kasteleba at the Luzerne County Prison) and "I'm going to get you.  If I were you, I'd stay out of Florida," (allegedly said to Kasteleba at the termination of Kasteleba's probation).

Judge disputes this theory, but argues that based on the undisputed facts, summary judgment should be entered in his favor for three alternative reasons: (1) the expiration of the statute of limitations has foreclosed any relief owed to Kasteleba; (2) Judge's absolute immunity, which arises from his prosecutorial role as parole officer, bars any damages arising from § 1983 liability; and (3) Judge's qualified immunity, which arises because Judge's actions did not objectively violate Kasteleba's clearly established rights, bars any damages arising from § 1983 liability.  Kasteleba counters that the statute of limitations has not run, and that Judge's actions are outside the scope of any immunity.

In order to receive the benefit of the statute of limitations, a party must affirmatively raise it in its first responsive pleading, which Judge has.  See Fed. R. Civ. P. 8(c), 12(b).  We must determine what statute of limitations applies and when it started to run.

Federal courts borrow the appropriate state statute of limitations to determine whether a § 1983 suit is timely.  See Wilson v. Garcia, 471 U.S. 261, 275 (1985).  The Pennsylvania statute

13

of limitations for personal injury actions, which applies to a § 1983 suit, is two years.  See 42 Pa.

Cons. Stat. Ann. § 5524; Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir. 1985).  "[T]he

accrual date of a § 1983 cause of action is a question of federal law that is not resolved by

reference to state law."  Wallace v. Kato, 127 S. Ct. 1091, 1095 (2007).  The cause of action

accrues when the plaintiff has a complete and present cause of action, which is when the plaintiff

can file suit and obtain relief.  See id.  "'Under the traditional rule of accrual . . . the tort cause of

action accrues, and the statute of limitations commences to run, when the wrongful act or

omission results in damages.  The cause of action accrues even though the full extent of the

injury is not then known or predictable."  Id. at 1097 (quoting 1 C. Corman, Limitations of

Actions § 7.4.1, pp. 526–27 (1991)).

       In this case, the issuance of the April 30th warrant injured Kasteleba in October, 1985,

when he was held under armed guard in the hospital, pending extradition to Florida, pursuant to

that warrant.  At that point, Kasteleba's liberty had been deprived, which is the injury that

enables him to bring this action.  Kasteleba knew or should have known[4] of his injury in October,

1985.  In addition, Kasteleba had notice of the warrant issued in Florida because he was detained

pursuant to it.  A reasonable, diligent person would have inquired as to why he was being held

under armed guard, why he was to be extradited to Florida, even if he was eventually released

---

       [4]Kasteleba had actual knowledge of his detention pursuant to the April 30, 1985 warrant
when he was hospitalized in October, 1985.  Kasteleba admits in his Answer to the statement of
facts that "Plaintiff was involved in a traffic accident in Luzerne County in October of 1985 and
was held under armed guard, pending extradition to Florida on the warrant issued on April 30,
1985 by the Honorable Harry G. Hinkley, Jr., in Broward County, Florida Case No.
81013131CF10A[, and] Plaintiff was released after nobody from Florida came to pick him up."
(SOF ¶ 27–28 (internal citations omitted).)

from custody, and why a warrant had been issued for his arrest in Florida if such a person believed that the warrant wrongly encumbered him.

That Kasteleba later encountered the same injury in 2004 has no consequence to the calculation of the statute of limitations because the standard is when the plaintiff has suffered *an injury* related to the act or omission that results *in damages*, regardless of whether the full extent of damages is then known. This application of the statute of limitations makes sense for policy reasons as well. As the Supreme Court states in Wallace: "Defendants need to be on notice to preserve beyond the normal limitations period evidence that will be needed for their defense," id. at 1099, and "'States and municipalities have a strong interest in timely notice of alleged misconduct by their agents,'" id. at 1100 (quoting Brief for State of Illinois et al. as Amici Curiae 18 (No. 05-1240), 2006 WL 2944678, at *18). Had Kasteleba brought his claim within the two-year period following his 1985 detention, the Board could have investigated substantively his claim, and furthermore, the memories of the persons involved would have been fresher and the documents involved would probably still be available. It would be unfair (and perhaps inequitable) for Judge to have to defend himself in this action when the only person who remembers what allegedly happened is the plaintiff himself. See Wilson, 472 U.S. at 271 ("Just determinations of fact cannot be made when, because of the passage of time, the memories of witnesses have faded or evidence is lost.").

We need not pinpoint the exact moment when Kasteleba's cause of action accrued, for the date of its expiration in 1987 could have no practical bearing on the disposition of this case, which was commenced on August 3, 2005—eighteen years after Kasteleba was first injured. The statute of limitations began to run in October, 1985, and it expired at some point at or after

15

October, 1987.  Judge affirmatively pled in his Answer the statute of limitations as a defense as required by Federal Rule of Civil Procedure 8(c).  Therefore, summary judgment must be entered in his favor.

<strong>C<small>ONCLUSION</small></strong>

Viewing the evidence in the light most favorable to Kastelaba, we find that Kastelaba has failed to raise a genuine issue of material fact, and has failed to proffer evidence to support a dispute of material fact regarding the statute of limitations.  As we have discussed in this memorandum, weighing the uncontradicted evidence presented, we find that the defendants are entitled to summary judgment on all counts contained in Kastelaba's amended complaint due to (1) the stipulation of the parties and (2) the expiration of the statute of limitations for this action. An appropriate order follows.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

———————————————————————
                                                          :
JOSEPH R. KASTELEBA,                                      :
                                                          :
                          Plaintiff,                      :
                                                          :        Case No. 3:05-CV-1739
                     v.                                   :
                                                          :        (Judge Kosik)
                                                          :
JOHN JUDGE, et al.,                                       :
                                                          :
                          Defendants.                     :
———————————————————————:

## ORDER

AND NOW, this 7th day of August, 2008, IT IS HEREBY ORDERED THAT:

1.  The defendants' Motion for Summary Judgment on all counts of the plaintiff's complaint is GRANTED;

2.  Judgment is hereby entered in favor of the defendants and against the plaintiff;

3.  The Clerk of Court is directed to CLOSE this case.

*s/Edwin M. Kosik*
United States District Judge

17